GRAHAM H. NORRIS, JR.,
CA Bar No. 214076
NORRIS LAW GROUP, P.C.
1156 South State Street, Suite 204
Salt Lake City, Utah  84097
Phone: (801) 932-1238
Fax: (801) 951-4915
Email: graham@norrislawyer.com
Attorney for Plaintiff LUX EAP, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUX EAP, LLC, a Wyoming Limited Liability Company, | ) ) |
| Plaintiffs, | ) CASE NO.: 5:17-cv-1359 ) |
| vs. | ) ) **COMPLAINT FOR** |
| KATHLEEN A. BRUNER, ROBERT BRUNER, ROBERT BURKE, COMMUNITY ACTION EMPLOYEE ASSISTANCE PROGRAM, INC., a non-profit California corporation, and JOHN/JANE DOES 1-10, | ) **DECLARATORY RELIEF AND** ) **DAMAGES** ) ) **JURY DEMANDED** ) ) ) ) |
| Defendants. | ) ) |

COMES NOW plaintiffs LUX EAP, LLC ("Lux), by and through their attorney of record, Graham H. Norris, Jr., Esq., and hereby files this civil action against Defendants Kathleen A. Bruner, Robert Bruner, Robert Burke, Community Action Employee Assistance Program, Inc. ("CAEAP") and currently unidentified parties designated as John/Jane Does 1-10.

## NATURE OF ACTION

1.      This action seeks (i) a declaratory judgment that a series of agreements executed by the parties are void under California law and public policy; (ii) a declaratory judgment that Defendants' sale of, and transfer of control over, CAEAP

to Lux pursuant to those agreements is void under California law and public policy; (iii) a declaratory judgment that the individual Defendants breached their fiduciary duties to CAEAP and are obligated to wind-down CAEAP's business in accordance with California law; (iv) monetary damages arising out of Defendants' fraudulently inducement of Lux to purchase CAEAP through entry into agreements contrary to California law and public policy; and (v) recovery of monetary damages arising out of Defendant Robert Burke's legal malpractice in his role as legal advisor to CAEAP.

**PARTIES**

2.      Plaintiff Lux EAP, LLC ("Lux") is a Wyoming Limited Liability Company.  Phil Neuman, a resident and citizen of Nevada, is the only member of Lux.

3.      Defendant Kathleen A. Bruner is a resident and citizen of California.

4.      Defendant Robert Bruner is a resident and citizen of California.

5.      Defendant Community Action Employee Assistance Program, Inc. ("CAEAP"), is a California non-profit corporation.

6.      Defendant Robert Burke is a resident and citizen of California and upon information and belief, served CAEAP's legal counsel and as a member of its board of directors.

7.      Defendants John/Jane Does 1-10 are currently unidentified individuals

who, upon information and belief, are residents and citizens of California and former members of CAEAP's board of directors.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and this action is between citizens of different States.

9.      Venue is proper under 28 U.S.C. §§ 1391(b)((1) and (2) because (1) Defendants reside in this judicial district; and (ii) a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

**A.      The Bruners Organize and Operate CAEAP.**

10.      Upon information and belief, Defendants Kathleen and Robert Bruner (the "Bruners") created CAEAP in the 1990s as a California non-profit corporation for the alleged purpose of designing, implementing, and administering Employee Assistance Programs ("EAPs") for California public and private organizations.  An EAP is an employee benefit program that assists employees with personal problems and/or work-related programs, such as substance abuse, that may affect their job performance, health, mental and emotional well-being.

11.      As a California non-profit corporation offering EAPs to private and public organizations in California, CAEAP has at all times been subject to the

provisions of the Knox-Keene Health Care Service Plan Act of 1975, which regulates EAPs offering services to employees of California organizations.

12.     CAEAP derived its revenue from agreements with public and private organizations ("Client Agreements") to provide an EAP to their employees. CAEAP's revenue under the Client Agreements is determined by the number of employees who use the services provided under each client's EAP.

13.     Upon information and belief, Defendant Robert Bruner was a member of CAEAP's board of directors from at least January 1, 2016 through on or about June 1, 2016.

14.     Defendants Robert Burke is a lawyer licensed to practice in California. Upon information and belief, Bruner served as CAEAP's legal counsel, in which capacity he advised CAEAP's officers and board of directors concerning the transactions and other events described below.

15.     Upon information and belief, Defendants John/Jane Does 1-10 served as members of CAEAP's board of directors from at least January 1, 2016 through on or about June 1, 2016.

**B.     The Fraudulent Monthly Utilization Reports.**

16.     CAEAP is obligated under its Client Agreements to issue a monthly utilization report to each client that sets forth the number of employees who use services under that client's EAP for the month covered by the report.

17.    While under the direction and control of the Bruners, CAEAP consistently issued fraudulent utilization reports to its clients.   The fraudulent utilization reports inflated the number of employees using services provided under the client's EAP, thereby inflating amounts due to CAEAP from each client under its Client Agreement.

18.    The following chart sets forth some examples of fraudulent utilization reports issued by the Bruners when they operated and controlled CAEAP:

| Client | Year | Employee Use of EAP Services | |
|---|---|---|---|
| | | Reported | Actual |
| City of Pasadena | 2015 | 336 | 103 |
| | 2016 | 348 | 83 |
| Pasadena Police | 2015 | 56 | 2 |
| | 2016 | 53 | 1 |
| Hilman Maritime | 2015 | 12 | 0 |
| | 2016 | 14 | 0 |

C.    The Bruners' Fraudulent Representations to Lux.

19.    In or about the fall of 2015, the Bruners decided to retire.  Although California law and public policy preclude anyone from either owning or selling a

non-profit corporation, the Bruners decided they would attempt to sell their control over CAEAP to a third party by disguising the illegality of the transaction with phony consulting agreements.

20.     In or about January 2016, Lux learned that the Bruners were interested in selling CAEAP to a third party.  On January 15, 2017, Robert Bruner met with Lux's principal, Phil Neuman, at the Four Seasons Hotel in Las Vegas, Nevada. Lux's President, Colin C. Conner II, subsequently met with the Bruners in California, including an in-person meeting on March 8, 2016 at CAEAP's offices located at 1481 Ford Street, Suite 201, Redlands, California 92373 (the "CAEAP Office"), which the Bruners own.

21.     During their meetings with Neuman in Las Vegas and with Conner in California, and in telephone conversations with Neuman and Conner before and after those meetings, the Bruners made representations concerning CAEAP's operations, including the following:

    (i)     CAEAP was a "premiere" provider of EAP services to employees of California public and private organizations;

    (ii)    CAEAP "holds a broad and tenured experience in the field of employee assistance programing," which enables CAEAP to offer "a superior level of competent programing to meet the specific needs of different client

organizations;"

(iii)   CAEAP was financially sound, with a steady revenue stream an no debt;

(iv)   CAEAP's revenues under each Client Agreement was based on the use of EAP services by the client's employees as set forth in the monthly utilization reports;

(v)   The actual use by client employees of the EAP services provided by CAEAP as set forth on the monthly utilization reports generated sufficient income to cover all CAEAP expenses plus provide for generous compensation packages for the Bruners; and

(vi)   As the founders, executive officers, and board members of CAEAP, the Bruners had the right to sell CAEAP to Lux, but because non-profit corporations could not be owned under California law, the transaction had to be structured as "unbreakable" consulting agreements" between Lux and the Bruners rather than as a purchase agreement.

22.   These allegations were false.

23.   The Bruners knew these representations were false when the Bruners made the representations to Neuman and Colin.

24. In fact, CAEAP could meet its expenses and pay the Bruners a generous compensation package only because the Bruners issued fraudulent utilization reports to CAEAP clients, thereby inflating CAEAP's invoices and revenues.

**C.   The Illegal Sale of CAEAP to Lux Through Phony Consulting Agreements.**

25. At the in-person meeting on March 8, 2016, the Bruners and Conner entered a "handshake" verbal agreement under which the Bruners agreed to sell CAEAP to Lux (the "Handshake Purchase Agreement"). The Bruners entered the Handshake Purchase Agreement on behalf of themselves and CAEAP. Conner entered into the Handshake Purchase Agreement on behalf of Lux, and in reliance on the Bruners' fraudulent representations set forth, *supra*, at paragraph 17.

26. The terms of the Handshake Purchase Agreement included the following:

(i)   The purchase price was $3.1 million;

(ii)  Of the $3.1 million purchase price, $1,797,444 was payable over five years, or 60 months, as phony monthly "consulting fees;"

(iii) The remaining $1,302,556 of the purchase price was due in one lump sum on the 61st month after consummation of the agreement;

(iv)   The Bruners agreed to resign as officers, directors, and employees of CAEAP;

(v)    The Bruners agreed that, before they resign, they would execute (i) an agreement on behalf of CAEAP to retain Lux as CAEAP's manager; and (ii) a five-year lease of the CAEAP Office with an option for CAEAP to purchase the Office for $1.2 million at the end of the lease term;

(vi)   Lux agreed to replace the Bruners as officers and directors of CAEAP with Lux employees; and

(vii)  Lux agreed to execute "unbreakable" consulting contracts with the Bruners providing for the payment of the purchase price as set forth above.

27.    Pursuant to the Handshake Purchase Agreement, the following events took place:

(i)    On April 21, 2016, the Bruners executed a management contract on behalf of CAEAP with Lux, a copy of which is annexed hereto as Exhibit 1 (the "Management Agreement").

(ii)   On April 21, 2016, the Bruners executed a five-year lease with CAEAP, a copy of which is annexed hereto as Exhibit

2 (the "Lease").

(iii)   On April 21, 2016, in reliance on the Bruners' fraudulent misrepresentations set forth, *supra*, at paragraph 17, Lux executed purported "consulting agreements" with the Kathleen Bruner and Robert Bruners, copies of which are annexed hereto as Exhibits 3 and 4, respectively (the "Consulting Agreements").

(iv)   In May 2016, the Bruners resigned from their positions as officers, directors, and employees of CAEAP.

(v)   In May 2016, in reliance on the Bruners' fraudulent misrepresentations set forth, *supra*, at paragraph 17, Lux appointed its President, Conner, and another employee, John Gorzynski, to replace the Bruners as CAEAP's officers and board members.

28.   At all relevant times, the Bruners, Neuman, and Conner understood that the purpose of the Consulting Agreements was to pay the purchase price of $3.1 million to the Bruners.  Although the Bruners represented to Neuman and Conner that they would be available to answer questions regarding CAEAP's operations during the first few months of Lux's management of CAEAP, all parties understood that the value of such information was *de minimis* and that the $3.1 million purchase

price was intended as compensation for the Bruners' sale of CAEAP to Lux.

29.     In fact, after the execution of the Management Agreement, the Lease, and the Consulting Agreements (collectively, the "Written Sale Agreements"), the Bruners represented to CAEAP employees and clients that they had "retired" and were no longer involved in CAEAP's operations.  In addition, despite Lux's requests for information regarding inconsistencies in the monthly utilization reports and other operational issues, the Bruners did not provide any meaningful information to Lux.

### D.     Lux's Discovery of the Bruners' Fraud.

30.     During its first year of operating CAEAP, Lux discovered that CAEAP's prior revenues had been based on fraudulent utilization reports.

31.     Lux also discovered that the quality of CAEAP's EAP services was below industry standards, which was directly contrary to the Bruners' representations.

32.     Lux thereby discovered that CAEAP could not generate sufficient revenues to pay its expenses if accurate utilization reports were submitted.  To operate CAEAP without issuing fraudulent utilization reports, Lux was forced to cover substantial operating losses.

33.     By letter dated April 30, 2017, Lux (i) notified the Bruners that the Written Sale Agreements were null and void; and (ii) demanded that the Bruners unwind those agreements by resuming their prior positions as officers and directors

of CAEAP and reimbursing Lux for its damages arising from the Bruners' fraud.

34.     Rather than respond to Lux, the Bruners embarked on a campaign to discredit Lux with CAEAP clients, falsely representing to the clients that Lux had decided to close CAEAP and terminate all the Client Agreements.

35.     Because of the Bruners' false and defamatory statements to CAEAP clients, some clients terminated their agreements with CAEAP and Lux had no choice but to stop operating CAEAP.

## COUNT I

## (Declaratory Judgment

## – Purchase Agreements are Null and Void)

36.     Lux repeats the allegations set forth in paragraphs 1 through 35.

37.     Under California law and public policy, no person may either own or sell a California non-profit corporation.

38.     The Handshake Purchase Agreement and the Written Sale Agreements constitute a sale of CAEAP from the Bruners to Lux that is contrary to California law and public policy.

39.     The Handsake Purchase Agreement and the Written Sale Agreements therefore are unenforceable as a matter of California public policy.

40.     Lux is entitled to a declaratory judgment that the Handshake Purchase Agreement and the Written Sale Agreements are unenforceable and null and void as

contrary to California law and public policy.

## COUNT II

### (Declaratory Judgment

### – Consulting Agreements are Null and Void)

41.    Lux repeats the allegations set forth in paragraphs 1 through 40.

42.    Each of the Consulting Agreements provide:

This consultant agreement, includes a 5-year term and the 61st

payment per Attachment 1, cannot be terminated.

*See* Consulting Agreements (Exhibits 3 and 4) at 1 (last sentence of first paragraph

after "Whereas" clause).

43.    That provision, which prohibits termination of the Consulting

Agreements for any reason by any party under any circumstances, is unconscionable

and unenforceable under California law and public policy.

44.    Lux is entitled to a declaratory judgment that the Consulting

Agreements are unenforceable and null and void as contrary to California law and

public policy.

## COUNT III

### (Declaratory Judgment

### -- Sale and Transfer of CAEAP Void)

45.    Lux repeats the allegations set forth in paragraphs 1 through 44.

46.     Because the agreements under which the Bruners sold, and transferred control over, CAEAP to Lux are null and void under California law and public policy, the sale of, and transfer control over, CAEAP to Lux is also null and void under California law and public policy.

47.     The Bruners resigned from their positions as officers and directors of CAEAP and Lux appointed its employees to replace the Bruners in those positions as part of the Bruners' illegal sale of, and transfer of control over, CAEAP to Lux.

48.     Lux is therefore entitled to a declaration that the Bruners' resignation from their positions as officers and directors of CAEAP was ineffective and that the Bruners remain as officers and board members of CAEAP.

49.     Lux is also entitled to a declaration that the appointment of its employees as officers and directors of CAEAP to replace the Bruners was ineffective and that those employees are no longer officers or board members of CAEAP.

## COUNT IV

### (Declaratory Judgment

### -- Defendants' Obligation to Winddown CAEAP Business)

50.     Lux repeats the allegations set forth in paragraphs 1 through 49.

51.     As officers and directors of CAEAP, the Bruners owed fiduciary duties to CAEAP, including the duty to operate CAEAP in compliance with law and without engaging in fraudulent practices directed against CAEAP's clients.

52.     As members of CAEAP's board of directors, Defendants Burke and John/Jane Does 1-10 owed fiduciary duties to CAEAP, including the duty to take all reasonable steps to assure that CAEAP was operated in compliance with law and without engaging in fraudulent practices directed against CAEAP's clients.

53.     As CAEAP's legal counsel, Defendant Burke owed fiduciary duties to CAEAP, including the duty to take all reasonable steps to assure that CAEAP was operated in compliance with law and without engaging in fraudulent practices directed against CAEAP's clients.

54.     The Bruners breached their fiduciary duties to CAEAP by, inter alia, (i) issuing fraudulent utilization reports to CAEAP clients; (ii) making the fraudulent misrepresentations to Lux set forth, *supra*, at paragraph 17; and (iii) selling CAEAP to Lux; and (iv) attempting to conceal their breaches of fiduciary duty by disguising the sale's purchase price as phony consulting payments.

55.     Defendants Burke and John/Jane Does 1-10 breached their fiduciary duties to CAEAP by, upon information and belief, knowingly approving and ratifying the Bruners' conduct set forth in the preceding paragraph.

56.     Defendants Burke and John/Jane Does 1-10 breached their fiduciary duties to CAEAP by failing to take reasonable steps to assure that the Bruners were operating CAEAP in compliance with California law and without engaging in the type of conduct set forth in the preceding paragraphs.

57.   Defendants' breaches of their fiduciary duties were the direct and proximate causes of CAEAP's cessation of doing business.

58.   The Bruners' resignation as officers and directors of CAEAP was ineffective as a matter of California law and public policy. *See*, *supra*, at paragraphs 36-49.

59.   To the extent that Defendants Burke and John/Jane Does 1-10 resigned from their positions as directors of CAEAP, those resignations were ineffective.

60.   Lux is entitled to a declaration that the individual Defendants, *i.e*., the Bruners, Burke, and John/Jane Does 1-10, are obligated to winddown CAEAP's business in accordance with California law.

**COUNT V**

**(Fraudulent Inducement – asserted by Lux)**

61.   Lux repeats the allegations set forth in paragraphs 1 through 60.

62.   The Bruners made the representations set forth, *supra*, at paragraph 17, knowing that they were false and for the purpose of inducing Lux into entering the Handshake Purchase Agreement and the Written Sale Agreements.

63.   Upon information and belief, Defendants Burke and John/Jane Does 1-10, as the other members of CAEAP board, were aware of the Bruners' intent to sell CAEAP and approved, and ratified, the Handshake Purchase Agreement and the Written Sale Agreements.

64.     Upon information and belief, Defendants Burke and John/Jane Does 1-10, as the other members of CAEAP's board, were aware of, and ratified, the Bruners' fraudulent misrepresentations set forth, *supra*, at paragraph 17.

65.     Upon information and belief, Defendants Burke and John/Jane Does 1-10, as the other members of CAEAP board, were aware that the Bruners' representations set forth, *supra*, at paragraph 17, were false and that the Bruners were making those representations for the purpose of inducing Lux into entering into the Handshake Purchase Agreement and the Written Sale Agreements.

66.     Neuman and Conner, on behalf of Lux, reasonably believed, and relied on, the Bruners' false representations set forth, *supra*, at paragraph 17.

67.     In reliance on those representations, Conner entered into the Handshake Purchase Agreement and the Written Sale Agreements on behalf of Lux.

68.     As a direct and proximate cause of Lux's reliance on the Bruners' false representations set forth, *supra*, at paragraph 17, Lux incurred substantial damages.

69.     Lux's damages include, but are not limited to, the following:

(i)     payment to the Bruners of the first year of monthly payments toward the $3.1 million total purchase price, which amounts to $279,492; and

(ii)    investment of over $700,000 in CAEAP to meet expenses and continue providing EAP services to CAEAP clients

without engaging in the type of fraud the Bruners perpetrated.

## COUNT VI

### (Legal Malpractice Against Defendant Robert Burke)

70.     Lux repeats the allegations set forth in paragraphs 1 through 69.

71.     As CAEAP's legal counsel, Burke owed CAEAP, its officers, directors, employees, and managers, including Lux, the duty to provide legal advice with reasonable care.

72.     Upon information and belief, Burke was aware of, and provided legal advice to CAEAP in connection with, the Handshake Purchase Agreement and the Written Sale Agreements.

73.     Upon information and belief, Burke approved the Handshake Purchase Agreement and the Written Sale Agreements.

74.     Upon information and belief, Burke failed to advise CAEAP that the Handshake Purchase Agreement and the Written Sale Agreements were contrary to California law and public policy.

75.     If Burke engaged in the conduct set forth in the preceding paragraphs, he breached his duty to provide legal advice to CAEAP with reasonable care and competence.

76.     As a direct and proximate cause of Burke's breach of his duty to provide

legal advice to CAEAP with reasonable care and competence, Lux incurred substantial damages.

77.    Lux's damages include, but are not limited to, the following:

(iii)    payment to the Bruners of the first year of monthly payments toward the $3.1 million total purchase price, which amounts to $279,492; and

(iv)    investment of over $700,000 in CAEAP to meet expenses and continue providing EAP services to CAEAP clients without engaging in the type of fraud the Bruners perpetrated.

**COUNT VI**

**(Punitive Damages Against The Bruners)**

78.    Lux repeats the allegations set forth in paragraphs 1 through 70.

79.    The Bruners intentionally issued fraudulent utilization reports to CAEAP clients with malice, oppression, and fraud.  The Bruners engaged in that conduct with intent to cause injury to CAEAP and/or with a willful and knowing disregard for CAEAP's rights and the rights of CAEAP's clients.

80.    The Bruners made the fraudulent representations to Lux set forth, *supra*, at paragraph 17, with malice, oppression, and fraud.  The Bruners engaged in that conduct with intent to cause injury to Lux and/or with a willful and knowing

disregard for Lux's rights and the rights of CAEAP's clients.

81.    Lux is entitled to an award of punitive damages against the Bruners in an amount to be determined by the trier of fact.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

WHEREFORE, Lux requests judgment as follows:

(i)    Under Counts I and II, a declaratory judgment that the Handshake Purchase Agreement and the Written Sale Agreements, including the Consulting Agreements, are unenforceable and null and void under California law and public policy;

(ii)    Under Count III, a declaratory judgment that the Bruners' sale of, and transfer of control over, CAEAP to Lux is void under California law and public policy;

(iii)    Under Count IV, a declaratory judgment that the individual Defendants breached their fiduciary duties to CAEAP and are obligated to winddown CAEAP's business in accordance with California law;

(iv)    Under Count V, an award of compensatory damages against all Defendants, jointly and severally, in an amount to be determined by the trier of fact of at least $1 million;

(v)    Under Count VI, an award of compensatory damages against Defendant Robert Burke in an amount to be determined by the trier of fact of at least $1 million;

(vi)    Under Count VI, an award of punitive damages against Defendants Kathleen Bruner and Robert Bruner in an amount to be determined by the trier of fact.

(vii)    Under Counts I through VI, pre- and post-judgment interest, costs and attorneys' fees as well as such further relief as this Court deems just.

Dated this 6th day of July, 2017.

/s/Graham H. Norris, Jr.
Graham H. Norris, Jr.
NORRIS LAW GROUP, PC
1156 S. State Street, Suite 204
Orem, UT  84097
Phone: (801) 932-1238
Fax: (801) 951-4915
Email: graham@norrislawyer.com
Attorney for Plaintiff

Of Counsel:
Edward Griffith, Esq.
THE GRIFFITH FIRM
45 Broadway, Suite 2200
New York, New York 10006
(212) 363-3784
(212) 363-3790 (fax)